## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-03352 |
| | ) | |
| ROBERT HEITBRINK, CONNIE MCELHANEY, individually and as special administrator of THE ESTATE OF WILLIAM MCELHANEY, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiff Cincinnati Insurance Company's Motion for Summary Judgment and Request for Oral Argument (d/e 28). The Motion for Summary Judgment, which is unopposed, is GRANTED, and the request for oral argument is DENIED.

### I. PROCEDURAL BACKGROUND

In December 2015, Plaintiff filed a complaint for declaratory judgment (d/e 1) to determine Plaintiff's obligations, if any, under

two policies of insurance that Plaintiff issued to Defendant Robert Heitbrink.  In October 2016, Plaintiff filed a First Amended Complaint (d/e 22, 23).

Plaintiff seeks a declaratory judgment that Plaintiff has no duty to defend or indemnify Mr. Heitbrink with respect to the lawsuit filed against Mr. Heitbrink by Connie McElhaney, individually and as special administrator of the Estate of William McElhaney.  See McElhaney v. Heitbrink, Morgan County Circuit Court, Case No. 2015-L-25 (the McElhaney Lawsuit).[1]  In the McElhaney Lawsuit, Ms. McElhaney seeks damages pursuant to the Illinois Wrongful Death Act, the Illinois Survival Statute, and

---

[1] A review of the Morgan County records shows that the McElhaney Lawsuit is still pending.  On January 23, 2017, an order was entered providing that a "Hearing on Motion for Default Judgment" has been "continued generally to be reset." http://www.judici.com/courts/cases/case_history.jsp?court=IL069015J&ocl=IL069015J,2015L25,IL069015JL2015L25D1 (last visited May 17, 2017). However, because there is no bona fide dispute in this case as to whether Mr. Heitbrink acted negligently or intentionally, the Court need not wait for the tort litigation to be resolved before deciding the coverage issue.  See State Farm Fire & Cas. Co. v. Leverton, 289 Ill. App. 3d 855, 856 (1997) (in a case where the underlying complaint alleged negligent conduct, the court held: "Where bona fide disputes arise over the issue of negligence versus intentional conduct for indemnification purposes, the tort litigation should be resolved before the court decides the coverage issue in a declaratory judgment action."); Cincinnati Ins. Co. v. Allen, 347 F. Supp. 2d 586, 592-93 (C.D. Ill. 2004) (finding the court did not need to wait for the tort litigation to be resolved before deciding the coverage issue where there was no bona fide dispute as to whether the defendant acted negligently or intentionally).

the Illinois Rights of Married Persons Act. Ms. McElhaney alleges that Mr. Heitbrink attacked and assaulted William McElhaney, resulting in Mr. McElhaney's death.

Defendant Connie McElhaney filed an answer to the complaint for declaratory judgment. Answer (d/e 12); Answer to First Amended Comp. (d/e 24) (admitting all of the allegations except the allegations that the McElhaney Lawsuit does not seek damages for a bodily injury caused by an occurrence and that the exclusions for abuse and expected or intended injury applied to bar coverage). On August 10, 2016, United States Magistrate Judge Tom Schanzle-Haskins entered an Entry of Default (d/e 19) against Defendant Heitbrink. On January 24, 2017, this Court denied without prejudice Plaintiff's Motion for Default Judgment against Defendant Heitbrink with leave to refile when all of the claims involving all of the parties have been resolved. Opinion (d/e 26).

On March 10, 2017, Plaintiff filed the Motion for Summary Judgment at issue herein. Plaintiff argues that the insurance policies issued to Mr. Heitbrink provide no coverage for the McElhaney Lawsuit and that Plaintiff has no duty to defend the

lawsuit.  Plaintiff argues (1) the McElhaney Lawsuit does not allege "bodily injury" caused by an "occurrence" as those terms are defined in the policies; (2) the policies contain exclusions for expected or intended injuries and bar coverage for Mr. Heitbrink; and (3) the abuse exclusions in the policies preclude coverage for Mr. Heitbrink.  No defendant has filed a response.  <u>See</u> CDIL-LR 7.1(D)(2) (providing that the failure to respond to a motion for summary judgment "will be deemed an admission of the motion").

## II. UNDISPUTED FACTS

Except where noted, the following facts are taken from Plaintiff's statement of Undisputed Material Facts.  <u>See</u> Pl. Mem. at 2-6 (d/e 29).

On July 17, 2015, Ms. McElhaney, individually and on behalf of the Estate of William McElhaney, filed the complaint in the McElhaney Lawsuit (Underlying Complaint).  The Underlying Complaint alleged the following:

a.   Ms. McElhaney is the surviving spouse of William McElhaney.

b.   On or about July 26, 2013, Mr. and Mrs. McElhaney stayed overnight as guests at the residence of Shelley Heitbrink and Robert Heitbrink in Jacksonville, Illinois. Mr. Heitbrink is

Shelley Heitbrink's ex-husband.  Shelly Heitbrink
is Ms. McElhaney's daughter.

c.  On July 27, 2013, at approximately 4:00 a.m., Mr.
Heitbrink "attacked and assaulted" Mr. McElhaney.

d.  Mr. Heitbrink also "repeatedly struck" and
"repeatedly stabbed" Mr. McElhaney.  As a direct
and proximate result of Mr. Heitbrink's conduct,
Mr. McElhaney suffered fatal injuries that resulted
in his death on July 27, 2013.

e.  On that date, the decedent Mr. McElhaney was 70
years old.  Mr. Heitbrink was 48 years old.

f.  Mr. McElhaney is survived by his wife and four
children.  As such, the McElhaney Lawsuit seeks
damages under the Illinois Wrongful Death Act,
Illinois Survival Statute, and Illinois Rights of
Married Persons Act.

Although not mentioned in Plaintiff's Undisputed Material Facts,

Count II of the Underlying Complaint—captioned "WRONGFUL

DEATH—NEGLIGENCE"—alleges that Mr. Heitbrink had a duty to

refrain from physically harming other persons, including Mr.

McElhaney.  Underlying Compl. at 3 (d/e 22-1).  Mr. Heitbrink

breached that duty by repeatedly striking and stabbing Mr.

McElhaney and by acting in total disregard for the safety and well-

being of Mr. McElhaney.  Id.

In a separate criminal case, Mr. Heitbrink was charged with and convicted of first degree murder for killing Mr. McElhaney. Mr. Heitbrink was sentenced to prison for that conviction.

Mr. Heitbrink has demanded insurance coverage from Plaintiff for the McElhaney Lawsuit.  Plaintiff issued an Executive Homeowners Policy with policy number H01 0533752 to Rob and Shelley Heitbrink, effective from July 9, 2013 through July 9, 2014 (the Homeowners Policy).  Plaintiff also issued a Personal Umbrella Liability Policy with policy number U01 533752 to Rob and Shelley Heitbrink for the same policy period (the Umbrella Policy).  The Homeowners Policy and the Umbrella Policy are collectively referred to as the Policies.

Both Policies provide coverage for "bodily injury" caused by an "occurrence."  The Personal Liability coverage of the Homeowners Policy contains the following Insuring Agreement:[2]

**SECTION II—LIABILITY COVERAGES**

**A.  SECTION II—COVERAGE**

---

[2] Plaintiff inadvertently failed to cite in the Motion for Summary Judgment the language in the policy endorsement that amends portions of the Policies.  <u>See</u> Resp. (d/e 33).  The policy language set forth herein takes into account the endorsements to the Policies as applicable.

### 1. COVERAGE E—PERSONAL LIABILITY

**INSURING AGREEMENT**

**a.** "We" will pay those sums the "insured" becomes legally obligated to pay as damages because of "bodily injury", "personal injury" or "property damage" to which this insurance applies. "We" will have the right and duty to defend the "insured" against any "suit" seeking those damages. However, "we" will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "personal injury" or "property damage" to which this insurance does not apply. "We" may, at "our" discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount "we" will pay for damages is limited as described in Section **II, D**. Section **II** Conditions, Condition **1**. Limit of Insurance; and

    (2) "Our" right and duty to defend ends when "we" have exhausted the applicable Limit of Insurance in the payment of judgments or settlements under Section **II**-Coverage **E**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under Section **II**, **C**. Section **II**-Additional Coverages.

**b.** This insurance applies to "bodily injury", "personal injury" or "property damage" only if:

    (1) The "bodily injury", "personal injury" or "property damage" is caused by an "occurrence"; and

> (2) The "bodily injury" or "property damage" occurs during the "coverage term"; or
>
> (3) The "personal injury" results from an "occurrence" that takes place during the "coverage term".

Homeowners Policy, p. 27 of 63 (subsection b); pp. 49-50 of 63 (subsection a) (d/e 22-2). The Umbrella Policy contains a substantially similar Insuring Agreement:

### SECTION I—COVERAGE

### A. Insuring Agreement

1. "We" will provide the insurance described in this policy. "You" agree to pay the premium and to comply with the provisions and conditions of this policy.

2. "We" will pay on behalf of the "insured" the "ultimate net loss" which the 'insured" is legally obligated to pay as damages for "bodily injury", "personal injury" or "property damage" arising out of an "occurrence" to which this insurance applies:

   a. Which is in excess of the "underlying insurance"; or

   b. Which is either excluded or not covered by "underlying insurance".

3. This insurance applies to "bodily injury", "personal injury" or "property damage" only if:

a. The "bodily injury", "personal injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

b. The "bodily injury" or "property damage" occurs during the "coverage term"; or

c. The "personal injury" results from an "occurrence" that takes place during the coverage term".

4. The amount "we" will pay for damages is limited as described in the Limit of Insurance (Section II).

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense and Supplemental Payments (Section I C.).

Umbrella Policy, p. 8 of 23 (d/e 22-3).

Plaintiff did not include the definition of "bodily injury" in its Undisputed Material Facts. However, the Homeowners Policy provides that "bodily injury" means "bodily harm, sickness or disease sustained by a person, including death resulting from any of these at any time." Homeowners Policy, p. 4 of 63 (d/e 22-2). In contrast, "personal injury" is defined as injury arising out of defamation of character; false arrest, detention, or imprisonment; wrongful eviction; malicious prosecution; or oral or written publication of material that

violates a person's right to privacy.  Id.  The Umbrella Policy
defines "bodily injury" to mean "bodily harm, sickness,
disease, disability, humiliation, shock, fright, mental anguish
or mental injury sustained by a person, including care, loss of
services or death arising out of any of these at any time."
Umbrella Policy, p. 4 of 23 (d/e 22-3).  The Umbrella Policy
contains the same definition of "personal injury" as the
Homeowners Policy.  Id. p. 7 of 23 (d/e 22-3).

The Personal Liability coverage of the Homeowners
Policy defines "occurrence" to mean "an accident, including
continuous or repeated exposure to substantially the same
general harmful conditions, that results in 'bodily injury' . .
. ." Homeowners Policy, p. 6 of 63 (d/e 22-2).  The Umbrella
Policy contains the same language.  See Umbrella Policy, p. 6
of 23 (d/e 22-3).

Both Policies contain exclusions for expected or
intended injury and exclusions for abuse.  The Personal
Liability coverage section of the Homeowners Policy contains
the following relevant exclusions:

**B.    Section II-Exclusions**

1.  **Applicable to Coverage E-Personal Liability**

    The following exclusions apply to Coverage **E**-Personal Liability:

    This insurance does not apply to:

    a.  **Expected or Intended Injury**

        "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of one or more "insureds" or which is in fact expected or intended by one or more "insureds", even if the injury or damage is:

        (1) Of a different degree or type than actually expected or intended; or

        (2) Sustained by a different person, entity, real or personal property, than initially expected or intended.

    However, this Exclusion **1.a.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

    \* \* \*

    l.  **Sexual Molestation, Corporal Punishment or Physical or Mental Abuse**

        An "insured" who inflicts, or directs another person to inflict, upon any person, sexual molestation, corporal punishment (other than administered by a teacher) or physical or mental abuse which results in the "bodily injury" or "property damage."

Homeowners Policy, p. 28 of 63 (subsection a); p. 50 of 63 (subsection l).  The Umbrella Policy contains a substantially similar exclusion for expected or intended injury.  <u>See</u> Umbrella Policy, p. 10 of 23; <u>see</u> <u>also</u> <u>id.</u>, p. 19 of 23 (Illinois Amendatory Endorsement adding additional language regarding payments to innocent co-insureds).  The Umbrella Policy provision excluding coverage for "abuse" provides that the insurance does not apply to: "'Bodily injury', 'personal injury' or 'property damage' arising from any actual, alleged or threatened act or acts of abuse, molestation, misconduct, or harassment." Umbrella Policy, p. 8 of 23 (d/e 22-3) (also containing an exception to the exclusion for corporal punishment administered by an insured provided that such liability is covered by underlying insurance).

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. Egan Marine Corp. v. Great Am. Ins. Co. of New York, 665 F.3d 800, 811 (7th Cir. 2011).

## IV. ANALYSIS

As noted above, Plaintiff argues that Plaintiff has no duty to defend or indemnify Mr. Heitbrink for the McElhaney Lawsuit because (1) the McElhaney Lawsuit does not allege "bodily injury" caused by an "occurrence"; (2) the Policies' exclusions for expected or intended injuries preclude coverage for Mr. Heitbrink; and (3) the Policies' abuse exclusions preclude coverage for Mr. Heitbrink.

Plaintiff asserts, and no party disputes, that Illinois law applies. Under Illinois law, an insurer's duty to defend is broader than the duty to indemnify. Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 125 (1992). To determine whether the insurer has a duty to defend, the court looks at the allegations in the underlying complaint and compares those allegations to the

relevant provisions of the insurance policy.  Id. at 108.  If the facts alleged in the underlying complaint fall within, or potentially fall within, the policy's coverage, the insurer has a duty to defend.  Id.; see also U.S. Fid. & Guar. Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73 (1991) (in a declaratory action, courts in Illinois will find a duty to defend even if only one theory alleged in the underlying complaint is potentially within the policy's coverage).  An insurer does not have a duty to defend where "'it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'"  Connecticut Indem. Co. v. DER Travel Serv., Inc., 328 F.3d 347, 349 (7th Cir. 2003) (quoting Wilkin, 144 Ill. 2d at 73).  The court construes the underlying complaint liberally in favor of the insured.  Lyons v. State Farm Fire & Cas. Co., 349 Ill. App. 3d 404, 407 (2004).

The construction of an insurance policy is a question of law. Am. States Ins. Co. v. Koloms, 177 Ill. 2d 473, 480 (1997).  In construing an insurance policy, the court must ascertain and give effect to the intentions of the parties as expressed in their agreement.  Hobbs v. Hartford Ins. Co. of the Midwest, 214 Ill. 2d

11, 17 (2005). If the terms of the policy are clear and unambiguous, then the court gives the terms their plain and ordinary meaning. See Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd., 223 Ill. 2d 407, 416 (2006). Conversely, if the terms of the policy are susceptible to more than one meaning, then the court considers the terms ambiguous and construes the policy strictly against the insurer who drafted the policy. Rich v. Principal Life Ins. Co., 226 Ill. 2d 359, 371 (2007). Illinois courts construe the insurance policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. Id.

Plaintiff first argues that the Underlying Complaint in the McElhaney Lawsuit does not allege "bodily injury" caused by an "occurrence." As noted above, the Polices provide coverage only if the "bodily injury" is caused by an "occurrence." See Homeowners Policy, p. 27 of 63 (providing that the insurance applies to bodily injury only if the bodily injury is caused by an occurrence); Umbrella Policy, p. 8 of 23 (d/e 22-3) (same). The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful

conditions, that results in "bodily injury" . . ." <u>See</u> Homeowners
Policy, p. 6 of 63 (d/e 22-2); Umbrella Policy, p. 6 of 23 (d/e 22-3).

The Policies do not define the term "accident." Illinois courts
define an accident as "an unforeseen occurrence, usually of an
untoward or disastrous character or an undesigned[,] sudden or
unexpected event of an inflictive or unfortunate character." <u>Aetna
Cas. & Surety Co. v. Freyer</u>, 89 Ill. App. 3d 617, 619 (1980); <u>see
also</u> <u>State Farm Fire & Cas. Co. v. Young</u>, 2012 IL App (1st)
103736, ¶ 26; <u>Lyerla v. AMCO Ins. Co.</u>, 536 F.3d 684, 688-89 (7th
Cir. 2008) (using the Illinois courts' definition of "accident" where
the policy did not define the term "accident"). "The natural and
ordinary consequences of an act do not constitute an accident."
<u>Freyer</u>, 89 Ill. App. 3d at 793. In addition, if the person performing
the act intended or expected the result, the event was not an
accident. <u>Young</u>, 2012 IL App (1st) 103736 at ¶¶ 26, 35 (also
noting that an intentional act is often not covered for two
reasons—because it is not accidental and because it falls under
the policy exclusion for intentional acts). Therefore, an injury
caused by an assault and battery is generally not considered

accidental, even if the specific injury was not intended.  <u>Freyer</u>, 89 Ill. App. 3d at 793.

Comparing the allegations in the Underlying Complaint to the provisions of the Policies, the Court finds that the Underlying Complaint does not allege a bodily injury caused by an occurrence as defined by the Policies.  The Underlying Complaint alleges that Mr. Heitbrink attacked and assaulted Mr. McElhaney and repeatedly struck and stabbed Mr. McElhaney.  These alleged actions cannot reasonably be called accidental.  <u>See</u>, <u>e.g.</u>, <u>Cincinnati Ins. Co. v. Allen</u>, 347 F. Supp. 2d 586, 592-93 (C.D. Ill. 2004) (underlying complaint alleging that the insured walked over and struck the victim then punched and struck the victim again as the victim exited a vehicle, causing the victim to fall and strike his head on the driveway, did not allege accidental conduct).

While Count II of the Underlying Complaint is identified as "WRONGFUL DEATH—NEGLIGENCE," the legal labels that a plaintiff uses in the underlying case are not dispositive as to whether a duty to defend exists.  <u>Allen</u>, 347 F. Supp. 2d at 590. This Court looks not at the legal theory asserted but to the factual allegations.  <u>Young</u>, 2012 IL App (1st) 103736 at ¶ 28 ("To

determine whether the complaint alleged an accident, we look not to the legal theory asserted, but to the factual allegations."); Country Mut. Ins. Co. v. Dahms, 2016 IL App (1st) 141392, ¶ 47 (if the allegations show what can only be characterized as an intentional act, the fact that the complaint alleges the act is negligent is not controlling).

The factual allegations contained in Count II of Underlying Complaint omit the allegation that Mr. Heitbrink attacked and assaulted Mr. McElhaney but allege that Mr. Heitbrink repeatedly struck and stabbed Mr. McElhaney and acted in total disregard for Mr. McElhaney's safety and well-being. Underlying Complaint, Count II, at 3 of 6 (d/e 22-1). A court is not required to consider each count in isolation when the plaintiff has not pleaded the counts in the alternative. SCR Med. Transp. Servs., Inc. v. Browne, 335 Ill. App. 3d 585, 590 (2002). Nonetheless, even just reviewing the allegations in Count II, these allegations do not describe acts that can be reasonably construed as accidental. Count II alleges intentional conduct–repeated striking and stabbing in total disregard for Mr. McElhaney's safety and well-being. Calling what happened to Mr. McElhaney an accident is a

"tortured interpretation of the word." <u>Young</u>, 2012 IL App. (1st) 103736 ¶ 29, 360 Ill. Dec. at 273 (allegations that the defendant failed to call 9-1-1 when the victim was clearly in peril, allowed the victim to die, and then moved her body could not reasonably be called accidental, even though the plaintiff characterized the act of failing to call 9-1-1 as negligent in the complaint); <u>see</u> <u>also</u> <u>Farmers Auto Ins. Ass'n v. Danner</u>, 2012 WL App (4th) 110461, ¶6 (finding the acts could not reasonably be considered accidental where the underlying complaint contained a negligence count alleging that the insured got into his truck and, in a fit of rage, drove the truck at a high speed, veered off the lane, failed to regain control, and struck the victim, particularly in light of the fact that another count alleged that the insured then exited the vehicle and beat the victim with a golf club).

Plaintiff also argues no duty to defend or indemnify exists because the Policies contain exclusions for expected or intended injuries. Specifically, the Policies exclude from coverage any "bodily injury" which may reasonably be expected to result from the intentional or criminal acts of an insured or which is in fact expected or intended by the insured, even if the injury is of a

different degree or type than actually expected or intended. Homeowners Policy, p. 28 of 63 (d/e 22-2); Umbrella Policy, p. 10 of 23 (d/e 22-3). Damages caused by an assault and battery normally fall under an exclusion for intended or expected injury even if the injury was greater than what was intended. <u>Freyer</u>, 89 Ill. App. 3d at 620.

As noted above, the Underlying Complaint alleges intentional and criminal conduct by Mr. Heitbrink—acts of attacking, assaulting, repeatedly stabbing, and repeatedly striking Mr. McElhaney. In fact, Mr. Heitbrink was ultimately convicted of first degree murder. In addition, Mr. Heitbrink would have reasonably anticipated the injuries to Mr. McElhaney resulting from Mr. Heitbrink's attack, assault, repeated stabbing, and repeated striking of Mr. McElhaney, as well as by acting in total disregard for Mr. McElhaney's safety and well-being while committing such acts. Therefore, the exclusions in the Policies for expected or intended injuries also apply. <u>See</u> <u>Bay State Ins. Co. v. Wilson</u>, 96 Ill. 2d 487, 493-94 (1983) (finding that an insured who intentionally shot the victim and was later convicted had expected the injuries because the injuries were practically certain to result

from the conduct and, therefore, the exclusionary clause applied); Allen, 347 F. Supp. 2d at 592-93 (underlying complaint alleging that the insured punched and struck victim, causing the victim to fall and strike his head on the driveway, alleged injuries that were expected or intended and, therefore, were excluded from coverage under the policy); West Am. Ins. Co. v. Vago, 197 Ill. App. 3d 131, 133, 137 (1990) (allegations that the insured grabbed a waitress from behind, locked his arms around her waist, and thrust his pelvis against her buttocks several times could not be characterized as merely negligent or accidental conduct and the insured should have reasonably anticipated that his acts would cause emotional injury to the waitress; therefore, the exclusionary clause for expected or intended injuries barred coverage and the plaintiff had no duty to defend).

Having found that the Underlying Complaint does not allege bodily injury caused by an occurrence and that the exclusions in the Policies for expected or intended injury bar coverage, the Court need not address Plaintiff's additional argument that the abuse exclusions preclude coverage. In sum, the Court finds that the allegations in the Underlying Complaint do not state facts that

bring the case within, or potentially within, the Policies' coverage and the exclusionary provision is clearly applicable under the facts alleged in the Underlying Complaint. Consequently, Plaintiff does not have either a duty to defend or a duty to indemnify Mr. Heitbrink for the McElhaney Lawsuit. See <u>Vago</u>, 197 Ill. App. 3d at 138 (concluding that where there was no duty to defend there was no duty to indemnify).

## V. CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment (d/e 28) is GRANTED. Plaintiff is granted leave to file a Motion for Default Judgment against Defendant Robert Heitbrink within 14 days of this Opinion. Once the default judgment is entered, the Court will enter a final judgment in this matter.

**ENTER: May 17, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**